In the United States District Court
For the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| Naiker Alviarez, Individually and on behalf of the estate of Juan Fuenmayor<br><br>VS.<br><br>Goya Foods, Inc. | § § § § § § § § § | Civil No. 4:22-CV-00376<br><br>Jury Demand |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

NOW COMES Naiker Alviarez, Individually, as representative of the Estate of Juan Fuenmayor, Deceased, and as Next Friend of Juan Jose Triana Fuenmayor, a Minor, and Magaly Valencia (collectively, the **"Plaintiffs"**), complaining of Goya Foods, Inc. and Key Technology, Inc. (collectively, the **"Defendants"**), and for causes of action would respectfully show this Court and the Jury the following:

### I.   PARTIES

1. Naiker Alviarez, the wife of decedent, is an individual residing in Texas.

2. Juan Fuenmayor ("Fuenmayor") was an individual residing in Texas at the time of his death.

3. Plaintiff Juan Jose Triana Fuenmayor, a Minor ("Juan Jose"), son of the decedent, and is an individual residing in Texas.

4. Magaly Valencia, mother of the decedent, is an individual residing in Texas.

5. Defendant, Goya Foods, Inc. ("Goya") is an entity doing business in the state of Texas and has appeared in this action and no further service is necessary.

6. Defendant, Key Technology, Inc. ("Key") is a corporation located at 150 AVERY STREET, Walla Walla, WA 99362 USA, and is doing business in the State of Texas. Key Technology may be served by serving its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701-3136 USA.

## II.    JURISDICTION AND VENUE

7. This case was removed to this Court by Goya on February 3rd, 2022, based on diversity jurisdiction as of that time.

8. Plaintiffs claim in excess of $1,000,000, and the claims in question are within this Court's jurisdiction.

## III.    BACKGROUND

9. Fuenmayor was employed by Goya and worked at Goya's facility in Brookshire, Texas. On or about April 28, 2021, Fuenmayor was on the job at the Brookshire facility operating a forklift that made contact with an overhead pipe, causing the pipe to release water exceeding 200 degrees and beans onto his body, causing catastrophic burn injuries over 95% of his body and, eventually, death.

10. The design and layout of Goya's facility was executed by Key. Key designed, provided, and managed the installation of food processing equipment and systems at the facility. Key provided Systems Engineering, Project Management, and Training with respect to the facility.

## IV.  NEGLIGENCE & GROSS NEGLIGENCE

11. Key was negligent and grossly negligent which was a proximate cause of the incident, injuries and death in question.  The overhead pipe was located at an unsafe level above ground, and was not guarded.  The overhead pipe was only approximately 8 feet above ground and not guarded, meaning individuals working near it using forklifts and/or other equipment would more likely than not strike the overhead pipe during normal operations.

12. Key knew or should have known that forklifts and/or other equipment would be used throughout the facility to maneuver materials and objects.

13. Key provided Systems Engineering and Project Management during the installation, start-up, and commissioning of the equipment at the facility.  In addition, Key provided equipment transition recommendations and the development of equipment modules for wiring and plumbing connection points which included connections for utilities, air, water, electrical, controls, hydraulics and the indexing of equipment to facilitate installation. Key was negligent and grossly negligent in failing to properly provide these services which was the proximate cause of the incident, injuries, and death in question.

14. Key was negligent and grossly negligent in failing to provide responsible and competent Engineering Services, including any mandatory technical information, pertaining to the location, installation, plumbing, and support of the overhead piping throughout the facility, including the overhead pipe in question, which was a proximate cause of the incident, injuries and death in question.

15. Key was negligent and grossly negligent in failing to direct and consult with others

throughout the construction and installation of the facility, which included the installation and hook-up of Key's manufactured equipment and systems design, which was a proximate cause of the incident, injuries and death in question.

16. Key knew or should have known that the unguarded overhead pipe was installed at a dangerously low level from the ground, allowing it to be contacted by forklifts and/or other equipment. Key was negligent and grossly negligent in this regard, which was a proximate cause of the incident, injuries and death in question.

17. Key was negligent and grossly negligent in failing to ensure that the ordinary and expected users of the facility were safe with their equipment and Systems Layout and were knowledgeable and aware of the dangerously low unguarded overhead pipe, which was a proximate cause of the incident, injuries, and death in question.

18. Key was negligent and grossly negligent in failing to exercise reasonable care in carrying out its engineering responsibilities to design a system that was safe and could be operated and protected under normal conditions and operations at the facility, which was a proximate cause of the incident, injuries and death in question.

19. Key was negligent and grossly negligent in failing to warn or inform with regard to the design, installation and application of the hazards associated with the unguarded dangerously low overhead pipe which Key knew or should have known would be transferring liquids, steam, and product under pressure and at extremely high temperatures, which was a proximate cause of the incident, injuries and death in question.

20. Key was negligent and grossly negligent in failing to meet the applicable work product

standards of Engineering Professionals in its design of the facility and provision of equipment and installation services at the facility, which was a proximate cause of the incident, injuries and death in question.

21. Key was grossly negligent because its acts and omissions in the above regards, when viewed objectively from the standpoint of Key at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Key had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others.

22. The gross negligence of certain Key employees is attributable to Key, including but not limited to Key's employees R. Garrett, Stanley Schleif, and Steve Pellegrino. Key authorized the doing and manner of Key's work with respect to the facility. Certain Key employees were unfit and Key was reckless in employing them, including but not limited to Key's employees R. Garrett, Stanley Schleif, and Steve Pellegrino. Certain Key employees were employed as vice principals and in managerial capacities and were acting in the scopes of their employment, including but not limited to R. Garrett, Stanley Schleif, and Steve Pellegrino, and Key and its vice principals and managers ratified and approved Key's work with respect to the facility. All of this gross negligence was a proximate cause of the incident, injuries and death in question.

23. A Certificate of Merit is attached hereto as Exhibit A. Due to an existing confidentiality agreement, Exhibit A has been filed under seal.

24. Goya was negligent and grossly negligent which was a proximate cause of the incident,

injuries and death in question. This includes Goya's negligence and gross negligence in the screening, hiring, training, supervision and employment of Fuenmayor. With respect to hiring, Goya did not properly ensure that its employees had the requisite qualifications and experience for the positions assigned. With respect to training, Goya did not properly train Fuenmayor on forklift operations and knew he was not properly trained. With respect to supervision, Goya knew Fuenmayor was untrained and not competent to operate forklifts, but did not take appropriate action. Goya was grossly negligent because its acts and omissions in these regards, when viewed objectively from the standpoint of Goya at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and Goya had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others.

25. The gross negligence of certain Goya employees is attributable to Goya. Goya authorized the doing and manner of the screening, hiring, training, supervision and employment of Fuenmayor, certain Goya employees were unfit and Goya was reckless in employing them, certain Goya employees were employed as vice principals and in managerial capacities and were acting in the scopes of their employment, and Goya and its vice principals and managers ratified and approved Goya's screening, hiring, training, supervision and employment of Fuenmayor.

## V. WRONGFUL DEATH

26. Decedent Juan Fuenmayor's surviving family includes his wife, Naiker Alviarez, his son

Juan Jose, and his mother Magaly Valencia, each of which is a beneficiary of his estate.

27. By reason of the death of Juan Fuenmayor, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to loss of support, services, advice, counsel, and reasonable contributions of a pecuniary value excluding loss of inheritance.

28. As a direct and proximate result of the foregoing, Decedent Juan Fuenmayor's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of his death, and to incur various funeral, burial, estate, and administration expenses for which Plaintiffs are entitled to compensation.

29. By reason of the death of Juan Fuenmayor, his beneficiaries have in the past and will in the future continue to suffer loss of companionship and society including the loss of positive benefits flowing from the love, comfort, companionship, and society.

30. By reason of the death of Juan Fuenmayor, his beneficiaries have in the past and will in the future continue to suffer mental anguish including emotional pain, torment, and suffering.

31. By reason of the death of Juan Fuenmayor, his wife and son have suffered from a loss of inheritance including the loss of the present value of the assets that the deceased, in reasonable probability, would have added to the estate and left at natural death.

32. Plaintiffs also claim exemplary damages based on the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and

sensibilities of the parties, the extent that the conduct offends a public sense of justice, and the net worth of the Defendants.

33. Plaintiffs bring this action by virtue of the Wrongful Death Act, Tex. Civ. Prac. & Rem. Code § 71.004, and claim all benefits for all beneficiaries and recoverable damages under the Wrongful Death Act.

## VI. SURVIVAL ACTION

34. The Estate of Juan Fuenmayor claims all damages suffered by the Estate by reason of the death of Juan Fuenmayor including, without limiting the generality of the following: pain and mental anguish including the conscious physical pain and emotional pain, torment, and suffering Juan experienced; medical expenses including the reasonable expense of the necessary medical and hospital care; and funeral and burial expenses.

35. Plaintiff also claims exemplary damages based on the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties, the extent that the conduct offends a public sense of justice, and the net worth of the Defendants.

36. Plaintiff brings this action by virtue of the Survival Act, Tex. Civ. Prac. & Rem. Code § 71.021 and claims all benefits of the Survival Act on behalf of Juan Fuenmayor's Estate, and other persons entitled to recover under law.

## VIII. JURY DEMAND

37. Plaintiffs hereby request a trial by jury.

38. Plaintiffs hereby give actual notice to Defendants that any and all documents produced

may be used against Defendants at any pre-trial preceding and/or at trial of this matter without the necessity of authenticating the documents.

## IX.   EVIDENCE PRESERVATION

39. Plaintiff hereby reserves all rights associated with claims of spoliation of evidence. Material evidence that must continue to be preserved includes the overhead pipe in question, the forklift and all of its component parts, and any other material physical evidence.  In addition, inspections of the facility and the physical evidence are necessary.

40. Plaintiffs reserve the right to amend this Complaint as discovery and expert evaluation progresses.

## XIII.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand that Defendants answer herein as the law directs, and that upon final hearing, this Court enter Judgment against the Defendants for actual and punitive damages, together with interest thereon at the legal rate, costs of court, and for other such additional and further relief, special and general, at law and in equity, and as Plaintiffs otherwise show just and proper in accordance with the law.

Respectfully submitted,

**VB Attorneys**

*/s/ Vuk S. Vujasinovic*
**Vuk S. Vujasinovic**
SBN: 00794800
E-mail: vuk@vbattorneys.com
**Job Tennant**
SBN: 24106501

9

        E-mail: Job@vbattorneys.com
        6363 Woodway, Suite 400
        Houston, Texas 77056
        713.224.7800
        713.224.7801 Fax
        **Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this, the 27th day of May, a true and correct copy of the foregoing was served on counsel of record and/or all parties pursuant to the Federal Rules of Civil Procedure.

        */s/ Vuk S. Vujasinovic*
        **Vuk S. Vujasinovic**